**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LEONARDO CAFFO,**

    **Plaintiff,**

**vs.**               **Case No.  8:03-cv-2289-MSS**

**DILLARD'S, INC.,**

    **Defendant.**
_____/

**ORDER**

This cause comes on for consideration upon the filing of Defendant's Motion for Summary Judgment (Dkt. 23) and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Dkt. 29).

Plaintiff filed suit against Defendant for negligence.  Plaintiff claims that on June 28, 2002, Defendant negligently maintained its restroom by allowing a soapy fluid to accumulate on the floor.  Plaintiff seeks damages for injuries sustained when he slipped and fell.  Defendant denies that it was negligent.

Defendant has filed a motion for summary judgment and argues that it is entitled to summary judgment because there are no issues of material fact requiring jury consideration and no reasonable jury could enter a verdict in favor of Plaintiff on the facts as established by the record.  Plaintiff counters that Defendant's motion should be denied because there are genuine issues of material fact that a jury must weigh.  For the reasons that follow, the Court denies Defendant's Motion for Summary Judgment (Dkt. 23).

**I. <u>Summary Judgment Standard</u>**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). Initially, the moving party bears the burden of showing the Court, by reference to materials on file, that there is an absence of a genuine issue as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of the lawsuit and a dispute about a material fact is "genuine" when there is sufficient evidence for a reasonable jury to return a verdict in favor of either party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the moving party has met its burden, the non-moving party must then "go beyond the pleadings" and cite to specific facts that show a genuine issue for trial through an affidavit, depositions, answers to interrogatories or admissions on file. <u>Celotex Corp.</u>, 477 U.S. at 324.

In determining whether to grant summary judgment, the Court must view the evidence and inferences drawn from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988); <u>WSB-TV v. Lee</u>, 842 F.2d 1266, 1270 (11th Cir. 1988). The Eleventh Circuit has explained that:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one

> inference can be reasonably drawn, it is for the trier of fact to determine the proper one.

Id.  Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion.  See Augusta Iron & Steel Works, Inc., 835 F.2d at 856.  In ruling on a motion for summary judgment, the Court does not weigh conflicting evidence or make credibility determinations.  Stewart v. Booker T. Washington Insur., 232 F.3d 844, 850 (11th Cir. 2000).

## II. Undisputed Facts

On June 28, 2002, Plaintiff arrived at Dillard's Inc. ("Dillard's) to go shopping with friend Emanuel Pepe ("Pepe").  (Caffo Depo. at 29:3-16).  After purchasing an item for himself in the men's department, Plaintiff walked into the men's restroom, slipped and fell at approximately 3:15 p.m.  (Caffo Depo. at 33:22- 34:25, Dkt. 49).  Plaintiff testified that his hand and clothing were wet with some kind of soap while on the floor.  (Caffo Depo. at 43:8-12).  Pepe recalled seeing two or three spots of something red or pink on the floor.  (Pepe Depo. at 15:4-17).  Dillard's uses pink lotion hand soap in the men's restrooms.  (Lopez Depo. at 9:8-10).  At the time of Plaintiff's accident, Dillard's maintenance policy was to perform checks of its restrooms on the hour from 10:00 a.m. through 8:00 p.m. each day and to have employees fill out restroom inspection forms noting that the policy had been followed.   (Lopez Depo. at 10:1-4, 17:13-18, 32:15-19).  Either Dijana Zubic ("Zubic"), a former Dillard's housekeeping employee, or Carmen Don, another housekeeping employee, had shared or primary responsibility for cleaning the restrooms on the day of Plaintiff's accident.  The Dillard's restroom inspection forms on the day of Plaintiff's accident reflect Zubic's initials next to the 11:00 a.m. through the 4:00 p.m. inspection time slots for the

ladies restroom and the 1:00 p.m. through the 4:00 p.m. inspection time slots for the family restroom. (Zubic Depo. at Ex. 3). However, Zubic's initials are not present on the men's restroom inspection form at all. (Zubic Depo. at Ex. 4). Other Dillard's employees signed next to the 10:00 a.m. through the 1:00 p.m. inspection time slots and the 5:00 p.m. through the 8:00 p.m. inspection time slots. There are no initials next to the 2:00, 3:00 or 4:00 p.m. inspection time slots on the men's restroom form.

### III.    Analysis

Defendant contends that it is entitled to summary judgment because it is Plaintiff's burden to prove negligence and there is no evidence from which a jury could conclude that Defendant was negligent in the maintenance of its store.

Among the duties owed by premises owners is the duty to "reduce, minimize, or eliminate foreseeable risks...." Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 259 (Fla. 2002). Premises owners must "maintain the premises in a reasonably safe condition for the safety of business invitees on the premises, which includes reasonable efforts to keep the premises free from transitory foreign objects or substances that might foreseeably give rise to loss, injury, or damage." Fla. Stat. § 768.0710(1) (2002). This duty requires a premises owner to make diligent searches of its premises at reasonable intervals of time. Barbour v. Brinker Florida, Inc., 801 So. 2d 953, 956 (Fla. 5th DCA 2001).

In May 2002, the Florida Legislature enacted Fla. Stat. § 768.0710. Under this statute, a plaintiff in a civil action for negligence "involving loss, injury, or damage to a business invitee as a result of a transitory foreign object or substance on business premises" has the burden of proving the following:

4

      (a)      The person or entity in possession or control of the business premises owed a duty to the claimant;

      (b)      The person or entity in possession or control of the business premises acted negligently by failing to exercise reasonable care in the maintenance, inspection, repair, warning, or mode of operation of the business premises. Actual or constructive notice of the transitory foreign object or substance is not a required element of proof to this claim. However, evidence of notice or lack of notice offered by any party may be considered together with all of the evidence; and

      ©)      The failure to exercise reasonable care was a legal cause of the loss, injury, or damage.

Prior to the decision in <u>Owens v. Publix Supermarkets, Inc.</u>, 802 So. 2d 315 (Fla. 2001), resolution of cases involving slip and falls on foreign substances largely revolved around whether the plaintiff could establish that the premises owner had constructive knowledge of the foreign substance. <u>Id.</u> at 323. In <u>Owens</u>, the Florida Supreme Court altered the traditional rules of premises liability in cases involving "transitory foreign substances." The Court shifted the burden of proving the exercise of reasonable care onto the defendant once the plaintiff established that he fell as a result of a transitory foreign substance. <u>Id.</u> at 331. In so doing, the Court created a rebuttable presumption of liability in favor of the Plaintiff. <u>Id.</u> The Court eliminated "the specific requirement that the customer establish that the store had constructive knowledge" of the existence of the foreign substance in order for the case to be put to a jury. <u>Id.</u> This decision changed the focus from whether the premises owner had actual or constructive knowledge of the foreign substance to whether the premises owner exercised reasonable care in the maintenance of the premises. <u>Id.</u> Shortly following the <u>Owens</u> decision, however, the legislature promulgated Fla. Stat. § 768.0710 and removed the burden shifting put in place by the Florida Supreme Court.

Defendant correctly asserts that Plaintiff is not entitled to the benefit of the presumption established in Owens. What Defendant fails to address, however, is that Fla. Stat. § 768.0710 eliminated the actual or constructive knowledge requirement as an element of proof. The statute expressly states that actual or constructive notice of the transitory foreign object or substance is not a required element in a claim such as Plaintiff's but that it may be considered "along with all of the evidence." Fla. Stat. § 768.0710(2)(b). Defendant, nonetheless, cites to cases that largely turn on the issue of constructive notice in support of its summary judgment motion. See e.g. Publix Super Markets, Inc. v. Schmidt, 509 So. 2d 977, 978 (Fla. 4th DCA 1987)(reversing judgment in favor of the plaintiff where there was no proof of actual or constructive notice of the condition that caused the slip and fall); Hamideh v. K-Mart Corp., 648 So. 2d 824, 825 (Fla. 3d DCA 1995)(affirming the grant of summary judgment to the defendant where the presence of an employee of defendant in the aisle where plaintiff fell could not give rise to an inference of actual or constructive notice); Winn Dixie Stores, Inc. v. Gaines, 542 So. 2d 432, 433 (Fla. 4th DCA 1989)(reversing and remanding for the entry of directed verdict in favor of the defendant where floor was cleaned at 11:00 and the plaintiff slipped and fell between 11:00 and 11:30, precluding an inference that the defendant had constructive notice of the rice and beans the plaintiff slipped on). Thus, as these cases turn on the issue of constructive notice and predate Fla. Stat.§ 768.0710, they are not controlling in the present case.

Under Fla. Stat. § 768.0710, the focus is on whether Defendant exercised reasonable care in maintaining its premises. Here, Defendant has failed to show on this point that there is an absence of a genuine issue of material fact. While the burden of establishing a lack of reasonable care remains on Plaintiff, whether Defendant used reasonable care in inspecting its men's restroom on

the date in question is squarely in dispute in this case. The absence of any employee's signature indicating that he or she inspected the men's restroom in question at the required intervals, 2:00, 3:00 and 4:00, coupled with the signatures indicating that the women's and family restrooms were inspected might be sufficient alone to defeat summary judgment on this point. The widely varying and wholly inconsistent testimony of Zubic, however, leaves no doubt that factual disputes exist to preclude a determination as a matter of law that Defendant's employees followed Defendant's own reasonable procedure for the maintenance of its men's restroom on the date in question.

In support of its contention to the contrary, Defendant cites to (1) the signed interrogatory response of Stephen Cotter, a store manager, which relies on hearsay from a housekeeping employee (presumably Zubic) that an hourly bathroom check had just been completed shortly before the Plaintiff fell, and (2) the deposition testimony of Zubic that she performed the hourly check of the restroom shortly before Plaintiff fell. Defendant boldly states that there is "no evidence which contradicts Mr. Cotter or Ms. Zubic's testimony or otherwise supports Plaintiff's claim that Defendant was negligent...." To this point, Defendant either failed to read Zubic's deposition transcript or expected that the Court would not. Zubic's own testimony is internally inconsistent on the issue of whether she performed the hourly checks of the men's restroom in the hours just prior to Plaintiff's fall.

In response to questioning by Plaintiff's counsel, Zubic initially testified that she told her manager on the date in question that she did check the restrooms. Specifically, in response to a question about whether a manager called her after Plaintiff fell, Zubic testified:

> A: Steve Cotter said, Dijana, did you check the bathrooms. I says yes. And I put the sign. I have the sign there, you know. And they say, how it was. I mean, how can it be, it was excellent because you have to make it perfect when you go and check, cannot be even piece of paper on the floor.

7

(Zubic Depo. at 12:25- 13:5).

Plaintiff's counsel then showed Zubic the restroom inspection form for the men's restroom on the date in question, which does not contain Zubic's initials at all and contains no initials for the 2:00, 3:00 and 4:00 p.m. inspection time slots. Zubic testified that she checked the men's restroom even though she did not sign the restroom inspection form.

> Q: Who checked the rest room at 2:00, 3:00, and 4:00?
> A: I did but I didn't put -- sign there.
> Q: So you did not – you did not sign?
> A: Yes.
> Q: Why did you not sign this rest room inspection form?
> A: Just because I think it was busy that day. I don't know.
>
> (Zubic Depo. at 28:11-18).

Upon receiving an undesired response, Plaintiff's counsel then asked Zubic whether someone else could have been responsible for checking the men's restroom that day. In response, Zubic for the first time indicated that she may have been told that someone else would check the men's restroom on the date in question.

> A: That was - - my gosh. That was a mistake to my boss. They told me go and do another job, and Carmen, because he's a man, he is going to go in the men's bathroom. And after that, they paged me and said, Dijana, go and check the men's bathroom. And I remember that very good. I was pissed off. If you say go and - - I mean go do that job, don't worry, somebody else is going to do that, why you – and I didn't sign.
> Q: So, are you saying that you cleaned it or checked it but did not sign?
> A: Yes.
> Q: So you vividly remember of your own personal recollection - -
> A: Yeah.
> Q: - - that you checked it at 2:00, 3:00, and 4:00?
> A: Because I feel very, very sorry about that guy, you know, and I was - -
> Q: That is after the fall?
> A: Yeah.
> Q: I'm talking about before the fall.
> A: Yeah.
> Q: Are you certain you cleaned that or checked the men's rest room?
> A: Yes, I check the bathrooms.

8

> Q: Including the men's?
> A: Yes.
> Q: Why then did you not sign this?
> A: (Indicating).
> Q: Okay. Could you have been unloading a truck at that time?
> A: No, cannot be unloading, can be delivering stuff from the truck.
> Q: Do you think there may have been some confu- - -
> A: It's more important.
> Q: Do you think there may have been some confusion that maybe Steve, the manager, wanted somebody else to clean the men's rest room and not you that day?
> A: Steve has nothing to do - - Michael Lopez is who is my manager.
> Q: I'm sorry. Let's say Michael Lopez - -
> A: Yeah.
> Q: - - had you doing something else at 2:00, 3:00, and 4:00, could it have been possible that maybe he wanted somebody else other than you to clean the bathroom?
> A: Yes.
> Q: Okay. So we are not real sure if somebody else had the responsibility for the men's room that day?
> A: (Indicates affirmatively).
> Q: You or it could have been Carmen or someone else?
> A: Yeah, yeah.
>
> (Zubic Depo. at 29:11- 31:10).

Upon cross-examination by Defendant's counsel and in response to a flagrantly leading question, Zubic again stated that she was very sure that she cleaned the restrooms but did not sign the inspection form.

> Q: I think there was a little confusion earlier. At one point you said you are sure that you cleaned or you inspected the men's room during these times, and, then, again, later you said you are not sure. Is it your testimony that you are sure that you checked these - - the men's room - -
> A: Yeah, I'm very sure, but I didn't sign.
>
> (Zubic Depo. at 31:24- 32:7).

However, not even two lines later, Zubic's story changed.

> Q: Okay. If you had checked the ladies' room at two o'clock and three o'clock and you checked the family room at two o'clock and three o'clock --
> A: Yeah.
> Q: – would you have also checked the men's room at the same time?
> A: I couldn't because it was full with guys.
> Q: But sometime after, not at the exact same time?

> A: After he told me to go and do something else and Carmen is going to do that job.
> Q: Okay.
> A: You know, it was full with guys.
> Q: It was full with guys?
> A: Yes. And you cannot go and wait for them and tell them, hey, you know. And I paged him, and he said, okay, go and do that, Carmen is going to check, you know, and he is going to find out. And he didn't. And I came back again, and I was pissed off and I didn't - - I just - -
>
> (Zubic Depo. at 32:9- 33:1).

Whereupon, Defendant's counsel cut in with a different question. Zubic then testified that she almost always (90% of the time) signed off on her forms when she checked the restrooms.

> Q: Not on this date but in your experience at Dillard's - -
> A: Yes.
> Q: - - had there been an occasion where you had checked the men's room but you just did not check the card?
> A: No. I always - - I mean, you know - -
>
> (Zubic Depo. at 33:14-19).

Upon being prompted by Plaintiff's attorney to finish her statement, Zubic continued.

> A: I mean depends. I cannot remember right now.
> Q: Okay.
> A: Usually 90 percent.
> Q: Okay.
> A: You have to.
>
> (Zubic Depo. at 33:22- 34:3).

Then, in an apparent fit of confusion and frustration, Zubic concluded her cross-examination testimony as follows:

> Q: And you said earlier that you were pissed off, and that is why you didn't sign this card?
> A: No. I tried to do my job, I'm telling you, and it full with people and go next time and again and go next time, knock on the door, full. And how many times - - I need to have from the counter to - - some men help me go in, you know, and check is anybody else there. And they told me, come on over here, Carmen is going to go check that, go and deliver that and that. And I did that.
>    And when I came back, I said did anybody check the rest room, they said no, we have been busy. And I left and checked. And I came, you know, just, oh my gosh, let me go.

(Zubic Depo. at 36:4-15).

Rather than "let her go," counsel began with a new round of questioning on re-direct and re-cross. Zubic's testimony continued to oscillate. On re-direct examination by Plaintiff's counsel, Zubic again stated that she could not check the men's restroom because it was crowded with men.

> Q: Okay. Now, I think we got to the bottom of this. You told me that between 2:00, 3:00, and 4:00, you attempted to go check the men's rest room, but it was full of men?
> A: Yes, people.
> Q: So you could not go in there and do your job. And you complained to your supervisor, and he said that Carmen would go in and check?
> A: Yeah.

(Zubic Depo. at 37:1-8).

On re-cross examination by Defendant's counsel, Zubic testified again that she did check "the rest room" on the date that Plaintiff fell.

> Q: Did you check the rest room on the date that Mr. Caffo fell?
> A: Yes.
> Q: You did?
> A: Yes.
> Q: You are certain that you did?
> A: Yes.

(Zubic Depo. at 39:21- 40:2).

Then, on a second round of re-direct examination by Plaintiff's counsel, Zubic stated that she was not able to check the rest room between 2:00, 3:00 and 4:00 because there were too many men in the restroom.

> Q: You are certain you checked the rest room, but you never signed - -
> A: I didn't, I didn't sign.
> Q: Okay. But you weren't able to check it between 2:00, 3:00, and 4:00 because there was (sic) too many men in there?
> A: Yes.
> Q: Let's make sure we are clear on that.
> A: Yes.

(Zubic Depo. at 40:8-15).

11

What is clear is that neither attorney successfully elicited a coherent, consistent story from Zubic regarding her inspection of the men's restroom. Accordingly, Defendant's reliance on Zubic's testimony and her hearsay statement to Cotter that she checked the men's restroom "shortly before Plaintiff fell" is wholly insufficient to establish the absence of a genuine issue of material fact with respect to Defendant's exercise of reasonable care in the maintenance of its premises on June 28, 2002 (See Dkt. 23).

In light of Zubic's inconsistent testimony, a genuine issue of material fact clearly exists with respect to Defendant's use of reasonable care. Defendant relies on Zimmerman v. Eckerd Corporation, 839 So. 2d 835, 836 (Fla. 3d DCA 2003). There, the Court upheld the grant of summary judgment in favor of the defendant under both the Owens standard and Fla. Stat. §768.0710(2)(b). There was no evidence as to the identity of the liquid that caused the plaintiff to fall, and the uncontroverted testimony of the store manager was that the floors were inspected and maintained every five to ten minutes before the accident. Id. Here, however, there is evidence regarding the nature of the liquid on which Plaintiff slipped and there is a genuine factual dispute over whether the men's restroom was inspected in the two hourly inspection periods preceding Plaintiff's fall. The Court notes that Defendant, relying on Zimmerman, obtained a summary judgment in its favor in an unrelated slip and fall case, Vallozzi v. Dillard's, case no. 2:03-cv-358-FtM-DNF, upon the filing of a motion for summary judgment virtually identical to the motion filed in the present case. That case, however, involved uncontroverted testimony by a Dillard's store manager that he had walked through the area where the plaintiff fell approximately one to two minutes before the alleged accident and did not notice anything on the floor. (Case no. 2:03-cv-358-

FtM-DNF, Dkt. 35).  Further, the plaintiffs in that case did not file any evidence in support of their opposition to the motion for summary judgment.

This case more closely resembles Gerard v. Eckerd Corporation, 895 So. 2d 436, 437 (Fla. 4th DCA 2005).  There, the Court reversed a summary judgment granted in favor of the defendant even though the store manager testified that he observed a clean aisle approximately ten minutes before the plaintiff slipped and fell in the aisle.  Id. at 436-37.  The store's policy was to have its employees check an aisle for hazardous conditions whenever they were in that particular aisle.  Id. at 437.  The court noted that there was no evidence that a reasonable inspection procedure was in place *or followed* and, thus, there was an issue of fact over whether the inspection policy was reasonable.  Id. (emphasis added).  Here, while Defendant appears to have had an inspection policy in place, there clearly exists an issue of fact over whether the inspection policy was followed on the date in question.

The Court notes that Plaintiff still bears the burden of establishing that any failure by Defendant to exercise reasonable care was the legal cause of Plaintiff's damages.  However, Defendant has not argued that Plaintiff cannot meet this specific element of his case and, thus, summary judgment on this basis cannot be evaluated.

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 23) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on this 19th day of May, 2005.

Copies to:

Counsel of Record

MARY S. SCRIVEN
United States Magistrate Judge